**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION**

| | | |
|---|---|---|
| MALISA RANAE SIMS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case Number: 4:20-cv-01082-JHE |
| | ) | |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY ADMINISTRATION, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION[1]**

Plaintiff Malisa Ranae Sims ("Sims") seeks review, pursuant to 42 U.S.C. § 405(g), §

205(g) of the Social Security Act, of a final decision of the Commissioner of the Social Security

Administration ("Commissioner"), denying her application for a period of disability, disability

insurance benefits ("DIB"), and supplemental security income ("SSI"). (Doc. 1). Sims timely

pursued and exhausted her administrative remedies. This case is therefore ripe for review under

42 U.S.C. §§ 405(g), 1383(c)(3). The undersigned has carefully considered the record, and, for

the reasons stated below, the Commissioner's decision is **AFFIRMED**.

**I. Factual and Procedural History**

On August 15, 2018, Sims filed an application for a period of disability, DIB, and SSI,

alleging disability beginning June 27, 2018. (Tr. 162-73). After the agency denied her application,

Sims requested and appeared at a hearing before an Administrative Law Judge ("ALJ"). (Tr. 32-

45, 101-15). The ALJ issued an unfavorable decision on December 13, 2019, finding Sims not

---

[1] In accordance with the provisions of 28 U.S.C. § 636(c) and Federal Rule of Civil
Procedure 73, the parties have voluntarily consented to have a United States Magistrate Judge
conduct any and all proceedings, including trial and the entry of final judgment. (*See* doc. 13).

disabled.  (Tr. 12-31).  Sims requested review of the ALJ's decision, but the Appeals Council

denied her request on July 7, 2020.  (Tr. 1-6).  On that date, the ALJ's decision became the final

decision of the Commissioner.  On March 16, 2020, Sims initiated this action.  (*See* doc. 1).

Sims was 49 years old on the alleged onset date, and 51 years old when the ALJ issued the

decision.  (Tr. 23, 25).  Sims has a high school education and past relevant work experience as a

housekeeper in a hospital and as a retail bagger.  (Tr. 23).  She alleges disability due to severe

depression and high blood pressure.  (Tr. 204).

## II. Standard of Review[2]

The court's review of the Commissioner's decision is narrowly circumscribed. The

function of this Court is to determine whether the decision of the Commissioner is supported by

substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402

U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This Court must

"scrutinize the record as a whole to determine if the decision reached is reasonable and supported

by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983).

Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate

to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id.*

This Court must uphold factual findings supported by substantial evidence.  "Substantial

evidence may even exist contrary to the findings of the ALJ, and [the reviewing court] may have

taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the

findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).  However,

---

[2]In general, the legal standards applied are the same whether a claimant seeks DIB or SSI. However, separate, parallel statutes and regulations exist for DIB and SSI claims. Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates. The same applies to citations for statutes or regulations found in quoted court decisions.

the Court reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991).

### III. Statutory and Regulatory Framework

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder.[3] The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish entitlement to disability benefits, a claimant must provide evidence of a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)     whether the claimant is currently employed;
(2)     whether the claimant has a severe impairment;
(3)     whether the claimant's impairment meets or equals an impairment listed
        by the [Commissioner];
(4)     whether the claimant can perform his or her past work; and
(5)     whether the claimant is capable of performing any work in the national

---

[3]The "Regulations" promulgated under the Social Security Act are listed in 20 C.F.R. Parts 400 to 499.

economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to the formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). "Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job." *Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show such work exists in the national economy in significant numbers. *Id.*

## IV. Findings of the Administrative Law Judge

After consideration of the entire record and application of the sequential evaluation process, the ALJ made the following findings:

At Step One, the ALJ found Sims meets the insured status requirements of the Social Security Act through March 31, 2020, and that Sims had not engaged in substantial gainful activity since June 27, 2018, the alleged onset date. (Tr. 17). At Step Two, the ALJ found Sims had the following severe impairments: major depressive disorder and anxiety. (*Id.*). At Step Three, the ALJ found Sims did not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 18-19).

Before proceeding to Step Four, the ALJ determined Sims's residual functioning capacity ("RFC"), which is the most a claimant can do despite her impairments. *See* 20 C.F.R. § 404.1545(a)(1). The ALJ determined that Sims had the RFC to perform a full range of work at all exertional levels, with the following nonexertional limitations: She can frequently balance, stoop,

4

kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. She

should avoid concentrated exposure to extreme heat, cold, and any hazards. She can understand,

remember, and carry out simple instructions and maintain attention for at least two-hour periods.

She would function best wither own work area without close proximity to others. She could

tolerate ordinary work pressures, but should avoid excessive workloads, quick decision making,

rapid changes, and multiple demands. She could tolerate occasional interaction with the public,

co-workers, supervisors. Changes in the work routine should be simple and occur no more than

occasionally. (Tr. 20-23).

At Step Four, the ALJ determined Sims was uncapable of performing her past relevant

work. (Tr. 23). Relying on testimony from a vocational expert, and based on Sims's age,

education, work experience, and RFC, at Step Five the ALJ found jobs exist in significant numbers

in the national economy Sims could perform. (Tr. 23-24). Therefore, the ALJ determined Sims

had not been under a disability from June 27, 2018, through the date of the decision and denied

Sims's claim. (Tr. 24-25).

## V. Analysis

Although the court may only reverse a finding of the Commissioner if it is not supported

by substantial evidence or because improper legal standards were applied, "[t]his does not relieve

the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial

evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838

(11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)). The court,

however, "abstains from reweighing the evidence or substituting its own judgment for that of the

[Commissioner]." *Id.* (citation omitted). Here, the record demonstrates that substantial evidence

supports the ALJ's determination Sims failed to demonstrate a disability, and the ALJ applied the

proper standards to reach this conclusion.

In her "Memorandum in Support of Disability," Sims sets forth one "Error[] of Law" as follows:

> The finding that [Sims] can do a **full range of work** is not supported by substantial evidence. [Sims] has mental issues which preclude full time employment. If [Sims] is limited to sedentary work, she is entitled to benefits pursuant to GRID 201.12 at age 50.

(Doc. 16 at 1; doc. 18 at 2).  Although not set out as a separate alleged "error of law," Sims also argues "the VE's testimony is not substantial evidence because it is based on an inaccurate and incomplete hypothetical question. (Doc. 16 at 17-25; doc. 18 at 7-12).  Neither argument supports reversal.

## A. The ALJ's RFC Finding is Supported by Substantial Evidence

A claimant's RFC is the most she can do despite her limitations based on the relevant evidence in the record.  *See* 20 C.F.R. See 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (a)(3), 416.920(e), 416.945(a)(1), (a)(3); Social Security Ruling (SSR) 96-8p, 61 Fed. Reg. 34,474-01 (July 2, 1996).  At the hearing level, the ALJ is responsible for assessing a claimant's RFC, *see* 20 C.F.R. §§ 404.1546(c), 416.946(c), and it is often said that "the task of determining a claimant's [RFC] and ability to work is within the province of the ALJ, not of doctors."  *Robinson v. Astrue*, 365 F. App'x 993, 999 (11th Cir. 2010). Sims argues the ALJ's conclusion that she is not disabled should be reversed because the ALJ's RFC finding is not supported by substantial evidence because her mental limitations preclude full time employment.  (Doc. 16 at 12-17).

Specifically, Sims contends her mental health records, testimony, and Dr. Bentley's evaluation show she is not able to sustain full time employment. (*Id.*).  Despite reciting excerpts from the record, Sims does not point to any specific allegedly disabling limitation that the ALJ failed to consider, but asserts the record evidence proves she has them.  The standard of review is

not whether there was some evidence to support a finding of disability, but whether there was evidence that required such a finding. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). Sims has pointed to no evidence that would have compelled the ALJ to make a more restrictive RFC finding.

To the contrary, in her decision, the ALJ discusses the records from CED Mental Health Center documenting Sims's diagnosis of depressive disorder and her subjective complaints; Sims's testimony regarding her symptoms at the administrative hearing; records from Quality of Life demonstrating she was prescribed psychotropic mediation; and the consultative examination and opinion from Jack Bentley, Ph.D, a one-time psychological examiner. (Tr. 20-23). These records indicate few abnormalities and show that, with her medication, Sims continues to improve and her condition stabilize. (Tr. 20-21).

As the ALJ noted, these records indicate Sims began receiving mental health treatment for depression in August 2018 at CED Mental Health Center. (Tr. 417-30). Sims described depression with periodic crying spells, along with poor sleep and appetite. (*Id.*). She appeared depressed, but her mental status findings were otherwise normal. (*Id.*). Sims returned and met with the CED therapist in October 2018, to develop a treatment plan.

On December 21, 2018, Jack L. Bentley, Ph.D. conducted a consultative psychological examination. (Tr. 464-68). The ALJ relied on Dr. Bentley's examination and found his opinions persuasive. (Tr. 22-23). Specifically, the ALJ noted Dr. Bentley's examine demonstrated few abnormalities and did not provide objective support for Sims' allegations of disabling mental limitations. (Tr. 21-22, 466-68).

Sims also reported her depression and anxiety to psychiatrist Huma Khusro, M.D. in December 2018. (Tr. 472). Dr. Khusro prescribed Paxil and Vistaril as well as supportive

psychotherapy with a follow-up scheduled for three months. (*Id.*). At her next appointment on March 22, 2019, Sims reported she was doing better. (Tr. 493). Dr. Khusro reported Sims' mood and affect were better and that Sims reported not having daily crying spells and denied any lethal ideations. (*Id.*). Sims did report that she was experiencing anxiety. (*Id.*). Dr. Khusro continued Sims' medications and supportive psychotherapy and scheduled her to return in six months. (Tr. 494). At her next therapy session in June 2019, Sims reported a significant decrease in her symptoms. (Tr. 520-21).

On August 4, 2019, Sims sought emergency treatment for suicidal ideations without a plan, describing stressors related to her custody battle. (Tr. 557). She was transferred to another facility for treatment and reported that she had lost of Paxil and thus had not taken it for a few days. (Tr. 541-55). With medication and therapy, Sims' symptoms again improved and her mood stabilized. (*Id.*).

In assessing Sims' RFC, the ALJ reviewed these records and explained that Sims had been receiving mental health treatment since shortly after the alleged onset date, and that the records confirm improvement in her symptoms, which she admitted to at the hearing. (Tr. 22, 32-45, 417-30, 469-90, 491-96, 502-23). Although Sims testified she still experienced daily crying spells, Sims reported to her therapist that she was crying less than twice a month. (Tr. 22, 502-23). As to Sims' hospitalization for major depression with suicidal thoughts in August 2019, Sims admitted she had not taken her medication for a few days because she lost it. (Tr. 22, 541-55). Sims has denied any further thoughts of self-harm since that time. (Tr. 22, 502-23). As to other issues, the ALJ acknowledged Sims' complaints of medication-induced fatigue and urinary frequency, but noted that there was no indicated she reported either of these issues to her providers, and that she consistently presented as alert and fully oriented. (Tr. 22).

Although the ALJ found Sims could perform a full range of work at all exertional levels, she found several nonexertional limitations related to the complexity of instructions, attention span, interaction with others, and rapid changes and demands. (Tr. 20). Sims points to nothing in the record that would require the ALJ to impose more restrictions. For the reasons stated above, the ALJ's RFC finding is supported by substantial evidence, and Sims has not demonstrated otherwise.

**B.  The ALJ Properly Relied on the VE's Testimony**

Sims argues the VE's testimony did not constitute substantial evidence because it was based on "an inaccurate and incomplete hypothetical question." (Doc. 16 at 17-25). Specifically, Sims contends the ALJ's hypothetical was not substantial evidence because it failed to consider Sims's depression and mental health problems. (*Id.* at 17).

An ALJ is not required to include references to diagnoses or impairments in the hypothetical questions. A hypothetical question only needs to include the claimant's functional limitations that are supported by the record. *See England v. Astrue*, 490 F.3d 1017, 1023 (8th Cir. 2007). The VE is not a medical expert. Thus, the inclusion of diagnoses or impairments in the hypothetical question would not assist the VE in determining whether a claimant could perform her past relevant work.

Here, the ALJ obtained testimony from the VE to help determine if Sims could perform other work. *See* 20 C.F.R. § 404.1566(e). (Tr. 42-43). That is sufficient evidence that the ALJ properly relied on to conclude Sims could perform other work, and Sims fails to identify any specific work-related limitation (mental or otherwise) that the ALJ did not include in the hypothetical.

9

## VI. Conclusion

Based on the foregoing, and upon careful consideration of the administrative record and memoranda of the parties, decision of the Commissioner of Social Security denying Sims's claim for a period of disability, DIB, and SSI is **AFFIRMED**, and this action **DISMISSED WITH PREJUDICE.**  A separate order will be entered.

DONE this 7th day of March, 2022.

_____
**JOHN H. ENGLAND, III**
UNITED STATES MAGISTRATE JUDGE